NORTHAM TRADING CORP. ET AL. *v.* UNITED STATES

No. 4413.—Invoices dated Berlin, Germany, June 21, 1933, etc.
 Entered at New York July 3, 1933, etc.
 Entry No. 700463, etc.

(Decided October 17, 1938)

*James W. Bevans* for the plaintiffs.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel I. Auster* and *Dorothy C. Bennett*, special attorneys), for the defendant.

McCLELLAND, Presiding Judge: These are appeals to reappraisement from values found by the United States appraiser at the port of

New York on strike-on-the-box safety matches of Russian manufacture imported from Holland. Appraisements were made on the basis of foreign value as that value is defined in section 402 (c) of the Tariff Act of 1930, and as the result *per se* advances ranging from 7 per centum to 43 per centum were made over the entered values by the appraiser. In addition appraisements were made under the provisions of the Antidumping Act of 1921 following a finding of dumping by the Secretary of the Treasury, on the basis of which various sums were found to have accrued as dumping duties.

When the appeals were called for hearing counsel for the plaintiffs, instead of submitting evidence on the merits as to whether these advances and returns of dumping duty had been properly made, confined his presentation entirely to efforts to show that on each of the entries the collector of customs had failed to designate at least one package out of every ten packages of the matches involved for examination as required by section 499 of the Tariff Act of 1930, and that, even if a proper designation had been made, no such examination of the merchandise was made in the process of appraisement as the statute requires.

With regard to this procedure the contentions of the Government are thus succinctly stated in the brief filed by its counsel:

The Government contends (first) that since there is no motion to vacate the appraisements before the Court, and since the legality of the appraisements was not raised in the pleadings, the question is not properly before the court for determination, and (second) that since no evidence was introduced in support of the only issue raised by the pleadings, namely, the correctness of the amounts of the appraised values, the appeals should be dismissed for failure of proof.

In the light of the expressions of the Court of Customs and Patent Appeals in its opinion in *United States* v. *Woolworth*, 22 C. C. P. A. 184, T. D. 47126, it would appear to be settled that where an appraisement is defective by reason of the fact that one or more of the elements essential to a legal appraisement are lacking this court has no jurisdiction to proceed to reappraise the merchandise. It therefore follows that upon evidence being presented to it of such defect it is the court's duty to declare the appraisement null and void and its own inability to determine the value of the merchandise. It is noted in the record that counsel for the plaintiff directed the court's attention to these defects, particularly by his examination of the examiner who claimed to have examined the merchandise and made the returns of value and of dumping duty, but counsel failed to make a motion to dismiss. It is my view, however, that since the question is jurisdictional the court, may, on its own motion, determine it, and of course since the question of jurisdiction may be raised at any time it was not necessary that the basis of it, i. e. the invalidity of the appraisements, should have been asserted in the appeals to reappraisement. In this connection

see *United States v. C. J. Tower & Sons*, 24 C. C. P. A. 456, T. D. 48912. Until the jurisdictional question was settled, it was, of course, unnecessary to offer proof on the issue raised in the appeals, namely, the value of the merchandise.

So far as pertinent, section 499 of the Tariff Act of 1930 reads as follows:

Imported merchandise, required by law or regulations made in pursuance thereof to be inspected, examined, or appraised, shall not be delivered from customs custody, except as otherwise provided in this Act, until it has been inspected, examined, or appraised and is reported by the appraiser to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States. The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined.

In the space reserved on the summary sheet, which is attached to the invoice in each case, for the collector's designation of packages to be examined I find in all cases except that covered by the initial appeal that the collector, or his representative, merely wrote the abbreviation "Whf", which it is undisputed stands for "Wharf." In the initial appeal the notation is "Wharf—Hold All". Although it is contended in Government's brief that the significance of such notations was that the collector thereby designated the entire importation, or all the packages, for examination on the wharf, I am of the opinion that the evidence indicates otherwise.

Article 772 (*g*) of the Customs Regulations of 1931, in force and effect at the time this merchandise was imported, provided that—

Matches and other inflammable, explosive, and dangerous articles shall be examined at the importer's premises or other suitable place, but not at the public stores.

and it is the testimony of the examiner in the appraiser's office who made the appraisements and returns of dumping duty in these cases that it has been the practice at the port of New York for at least twenty-eight years past to hold all such merchandise on the wharf and to have men known as samplers extract from the cases so held a carton of matches of each type covered by the invoices which are sent to the examiner for examination upon which appraisement is made. The record is clear that under such practice no designation of any or of all the packages on any invoice was made, or was intended to be made, by the collector, the notation "Whf" being understood to refer only to the place where the goods were to be held until the examination was completed.

Besides being satisfied that no such designation of the merchandise was made by the collector as is contemplated by section 499, *supra,* I am also convinced that there was a failure to examine the merchandise in accordance with the requirements of the statute. It was established by the testimony of the examiner that his appraisements and returns were based upon samples taken from certain of the cases on the wharf and brought to him. As an example of the manner in which such samples were taken, it appears that there were 265 cases of matches covered by the invoice which formed the basis for the entry in the initial appeal to reappraisement, 80 cases being of the chop, or brand, "Philadelphia Club", 45 cases of the brand "Clubhouse", and 140 of the brand "Parkway." As to the portion of the shipment which was presented to him for examination, the examiner testified as follows:

Q. Now, can you state how many samples you received with respect to the matches, the 265 cases of matches, that form the subject matter of that particular reappraisement No. 116411–A?—A. The usual procedure, which I think was followed in this case, would be, in the first chop, "Philadelphia Club"—the brand—to send in a complete carton, containing 12 boxes; the next item, "Club House," to send in a complete carton; and the next—

By Mr. AUSTER:

Q. Containing how many boxes?—A. Containing 12 small boxes, which, in turn, contain 12 boxes—1 gross. And the next item is "Parkway," of which a 1-gross package would be submitted.

Q. That also applies, 1 gross, to the first kind?—A. 1 gross "Philadelphia Club"; 1 gross "Club House"; and 1 gross "Parkway". In other words, a 1-gross was a complete package.

Q. Of the particular kind?—A. Yes, sir. And a gross of each such, a sample of each different item on the invoice, would be submitted.

By Presiding Judge McCLELLAND:

Q. In other words, you had a representative package of each kind of matches?—A. Of each kind of matches on the invoice.

While I have no doubt that under the practice outlined a sufficient examination of the merchandise was afforded for all practical purposes, nevertheless it does not fulfill the requirements of the statute, and no authority has been pointed out to me which would permit such deviation from the plain provision of the law, nor has any reason been advanced why the requisite number of packages might not have been opened and examined to such an extent as to make the appraisement legal.

Under the circumstances I have no other course than to declare the appraisements in the cases at bar null and void for lack of at least one of the elements essential to a legal appraisement. Judgment will issue accordingly.